## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **DANIEL SCHEVE, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | **Civil Action No.** |
| **v.** | § § | **7:19-CV-248** |
| **TEXAS PRIDE FUELS, LTD.,** | § § | |
| **Defendant.** | § § § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff Daniel Scheve ("Named Plaintiff") on behalf of himself and all others similarly situated ("Class Members") (Named Plaintiff and Class Members are collectively referred to as "Plaintiffs") bring this wage theft suit against the above-named Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as amended, and the New Mexico Minimum Wage Act ("NM Wage Act"), N.M. STAT. § 50-4-19, *et seq.* Named Plaintiff shows as follows:

### I.  NATURE OF SUIT

1.  The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Likewise, the NM Wage Act requires that employees who work more than forty hours in a week be paid one and one-half their regular hourly rate for hours worked in excess of forty hours. N.M. STAT. § 50-4-22.

3. Defendant Texas Pride Fuels, Ltd. ("Defendant") violated the FLSA and the NM Wage Act by failing to pay its drivers at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours within a workweek. It has done so by knowingly permitting its employees to engage in compensable travel time and compensable preparatory and concluding work but nevertheless intentionally failing to pay those employees for all of that travel time or preparatory and concluding work. In addition, Defendant has paid, and continues to pay, a bi-monthly, non-discretionary safety and performance bonus. However, Defendant fails and refuses to include that bonus amount in calculating its employees' regular rates of pay. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and/or the Defendant's unlawful compensation policies, Named Plaintiff brings this action as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and as an opt-out class action under Federal Rule of Civil Procedure 23.

## II. PARTIES

4. Named Plaintiff Daniel Scheve is an individual who resides in Tarrant County, Texas and has been employed by Defendant within the meaning of the FLSA. With the exception of a six-week span of time in the fall of 2016, Named Plaintiff Scheve has been continuously employed by Defendant from December 2014 until the present. He has consented to be a party-plaintiff in this action. His consent form is attached as "Exhibit A."

5. The Named Plaintiff and Class Members are Defendant's current and former (1) automated fuel systems operators who worked as such for Defendant and (2) all non-exempt employees to whom

Defendant paid performance and safety bonuses but did not include such bonuses in the calculation of the employees' regular rates of pay.

6. Defendant Texas Pride Fuels, Ltd. is a Texas limited partnership that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Springtown, Texas. It may be served with process by service on its registered agent for service, Mr. Daniel T. Haile, 1300 Highway 199 East, Springtown, Texas 76082.

### III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this matter because Plaintiff asserts claims arising under federal law. Specifically, Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff's NM Wage Act claims form part of the same case or controversy under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Plaintiff's NM Wage Act claims pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action.

8. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in and around Midland County, Texas, which is in this District and Division. Named Plaintiff Scheve is an employee of Defendant who has performed work for Defendant in and around Midland County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action.

Defendant thus resides in this district and division.  28 U.S.C. §1391(c).  Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

## IV. COVERAGE UNDER THE FLSA

9.  At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiff and the Class Members.

10. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times hereinafter mentioned, Named Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. COVERAGE UNDER THE NM WAGE ACT

**14.** At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 50-4-21(B) of the NM Wage Act.

**15.** At all times hereinafter mentioned, Named Plaintiff and the NM Class Members (defined below) were individual "employees" within the meaning of Section 50-4-21(C) of the NM Wage Act, and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 50-4-21(A) of the NM Wage Act.

## VI. FACTUAL ALLEGATIONS

16. Defendant is a fuel distribution company that provides on-site fueling services for hydraulic fracturing operations in Texas, New Mexico, Louisiana, and Oklahoma.

17. Named Plaintiff has worked as a fuel delivery driver and automated fuel systems operator for Defendant for most of the past five years.  Named Plaintiff held the position of Pad Driver II, but regardless of title, Defendant's operators performed the same or similar job duties across Defendant's operations.

18. In the performance of their work, Plaintiffs handle tools, equipment, and other materials that were manufactured outside of the State of Texas and outside of the State of New Mexico.

19. Named Plaintiff were employed by Defendant in fuel delivery operations at Defendant's worksites in and around the Permian Basin, including Midland County, Texas and in New Mexico.  The Class Members are employed in all of the Defendant's locations.

20. For all times relevant to this action, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work.  The Plaintiffs' primary job duty is not the performance of office, or non-manual work directly related to Defendant's management or general business operations, or those of its customers.

21. Rather, when they are at the Defendant's jobsites, Plaintiffs spend most of their time performing manual tasks outside at jobsites in the oilfield, such as (1) monitoring and servicing equipment; (2) filling supplemental fuel tanks; (3) transporting fuel to Defendant's customers' equipment; and (4) fueling that equipment.   The job duties of the Defendant's employees at each of the Defendant's locations was and is essentially the same.  As a result, each employee performed the same or similar job duties throughout Defendant's operations.

22. The daily and weekly activities of Plaintiffs were routine and largely governed by standardized plans, procedures, and checklists created by Defendant. Virtually every job function was predetermined by Defendant, including the data to compile and schedule of work and related work duties. The Plaintiffs were prohibited from varying their job duties outside of the predetermined parameters.

23. Plaintiffs did not direct the work of two or more employees at any time during their employment. Plaintiffs did not have the authority to hire or fire other employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

24. Defendant's fuel delivery employees did not perform work that required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; and they do not perform work in a recognized field of artistic or creative endeavor.

25. Defendant did not pay Named Plaintiff or Class Members on a salary or a fee basis pursuant to 29 C.F.R. §541.600.  Instead, Defendant paid Named Plaintiff and Class Members an hourly wage plus a performance and safety bonus.  In addition, Defendant paid Named Plaintiff and Class Members for the drive time from their home to the Midland yard at the beginning of their hitch.

26. Defendant's fuel delivery employees were, at all times relevant to this action, non-exempt employees.

27. Defendant's fuel delivery employees work two weeks on and one week off.  During their two-week hitch, Named Plaintiff and Class Members worked long hours.  For example, during the pay period May 26, 2019 through June 8, 2019, Defendant paid Named Plaintiff Scheve for 159 hours; and during the pay period April 21, 2019 through April 27, 2019, Defendant paid Named Plaintiff Scheve for 128 hours.

28. However, Defendant did not pay Plaintiffs at all for substantial amounts of Drive Time and other Off the Clock Time, discussed below.   Thus, during all times relevant to this action, in weeks in which they perform work for Defendant, Plaintiffs typically worked more than forty hours per week, and they often worked very long hours and much more than forty hours in a week.

29. Named Plaintiff and Class Members often lodged at Defendant's company-provided bunkhouses in Midland, Texas.  After Plaintiffs departed the bunkhouses for the job site, no less than one day during each week, they were required to obtain and load fuel, water, and other items necessary to their work onto their vehicles before driving to their jobsites.  Without these items, and without performing the preparatory work to obtain and load them, Named Plaintiff and Class Members could not have performed their work for Defendant.  Obtaining and loading these items was integral and indispensable to the performance of the fuel delivery employees' primary job duty for the Defendant—fueling its customer's equipment.  Named Plaintiff and Class Members start their workday when they obtain these items; and Named Plaintiff and Class Members routinely must obtain these items before driving to their jobsites.  Named Plaintiff and Class Members most often obtained these items from truck stops or other gas stations located on the way to Defendant's job sites.

30. Defendant's fuel delivery employees typically worked 12-hour shifts.  Those shifts lasted from 5:00 (a.m. or p.m.) until 5:00 (p.m. or a.m.).  Defendant typically had four-person crews at a job site, with two crewmembers on each shift. Named Plaintiff and Class Members often picked up the other crew member before continuing to drive to their own jobsites.

31. After performing the work described above, Plaintiffs would then drive to their own jobsites in Texas and New Mexico.  The roundtrip drives to and from the jobsites would often take three or more hours.

32. When their shift at the jobsite ended for the day, Plaintiffs would drive back to the bunkhouse in Midland.  On one or more workdays during each workweek, Plaintiffs continued to perform work after leaving the job sites.  For example, they would often be required to stop at service stations to obtain and load fuel, water, and other necessary equipment.  Plaintiffs would then continue their drives back to the place where they were lodging.

33. In addition, after arriving back at the place where they were lodging, Defendant required some of the Plaintiffs to participate in conference calls.

34. In short, Plaintiffs performed work that was integral and indispensable to their primary job duties both before driving to the jobsite, and after departing from the jobsite.

35. Defendant provided vehicles for Plaintiffs to drive to and from the jobsites.  For example, Defendant provided Named Plaintiff a Ford F150, and all Plaintiffs drove vehicles of similar size.  The Plaintiffs drove these trucks with no trailer of any kind attached.  The motor vehicles that Defendant provided to Named Plaintiff and Class Members to drive had a gross vehicle weight rating (GVWR) of 10,000 pounds or less.

36. Named Plaintiff and Class Members operated vehicles with a GVWR of 10,000 pounds or less during every workweek during their employment with Defendant.

37. Named Plaintiff and Class Members used the vehicles that Defendant provided to transport themselves, the other crewmember, fuel, water, and other supplies that were necessary to perform their work to their jobsites; and Named Plaintiff and Class Members drove themselves, the other crewmember, fuel, water, and other supplies that were necessary to perform their work to their jobsites in all workweeks in which they performed the job duties of fuel delivery employees. This is collectively referred to in this Complaint as "Off the Clock Time."

38. On average, Named Plaintiff spent roughly 28-30 hours per week driving to and from the worksite ("Drive Time") and performing work during Off the Clock Time. Defendant did not compensate Plaintiffs at all for any of this time.

39. Other than paying for drive time from their homes to Midland at the start of their hitches, Defendant had a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for anything other than the work performed at the customers' jobsites. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for their Off the Clock Time and their Drive Time.

40. Defendant was aware that Plaintiffs were performing work outside of the hours for which Defendant paid them. But Defendant did not and does not compensate Named Plaintiff or Class Members for any Drive Time to and from Defendant's jobsites.

41. In addition, Defendant pays Plaintiffs performance and safety bonuses that are non-discretionary.

42. Those performance and safety bonus are generally $100 every other week.

43. Defendant does not include those performance and safety bonuses to calculate the regular rate of pay from which the Plaintiffs' overtime premiums are calculated.

44. As a result, Defendant has failed and refused to pay Named Plaintiff and Class Members for all overtime hours that they worked, and Defendant has failed and refused to pay Named Plaintiff and

Class Members all overtime compensation that they are owed for their hours worked over 40 in a workweek.

45. Defendant had notice that Plaintiffs expected to be paid for their Drive Time. Plaintiffs communicated with their managers about the Drive Time but were repeatedly told that Defendant would not pay for Drive Time because the customer did not pay for Drive Time

46. Because, as indicated above, compensable Drive Time and Off the Clock Time occurred in weeks where Plaintiffs were working more than forty hours, and because Defendant does not include non-discretionary bonuses in the regular rate of pay, Defendant failed to pay Plaintiffs at an appropriate overtime rate for all of their Drive Time of Off the Clock Time.

47. Defendant has employed and is employing other individuals as fuel delivery employees who have performed the same job duties under the same pay provisions as Named Plaintiff, in that they have performed, or are performing, the same job duties, and have consistently worked in excess of forty hours in a workweek and have been denied any pay for Drive Time and Off the Clock Time and thus overtime compensation at a rate of not less than one-and-one-half times their regular rates of pay.

48. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Named Plaintiff and the Class Members.

**Defendant's denial of pay for overtime constitutes a continuing course of conduct.**

49. In 2009, the New Mexico 49th Legislature unanimously passed—and the governor signed—House Bill 489. House Bill 489 became effective June 19, 2009. With House Bill 489's passage, the statute of limitations for wage claims, including unpaid overtime claims, under the NM Wage Act was extended from one year to three years. NMSA 1978 § 37-1-5. Also, effective June 19, 2009,

the statute of limitations under the NM Wage Act is tolled when the violation is part of a "continuing course of conduct." *Id.* § 50-4-32.

50. Since before Named Plaintiff began working for Defendant and continuing through today, Defendant has maintained a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for Drive Time and Off the Clock Time and also failing to include the non-discretionary bonuses in the overtime rate calculation.

51. Defendant's continued refusal to pay for all of the Plaintiffs' compensable work time constitutes a continuing course of conduct.

## VII. FLSA COLLECTIVE ACTION ALLEGATIONS

52. Named Plaintiff Scheve seeks conditional certification pursuant to 29 U.S.C. § 216(b) of the following class (the "FLSA Class Members"):

> **All current and former fuel delivery employees of Defendant who were paid by the hour in the last three years.**

53. Named Plaintiff and the FLSA Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, fuel delivery employees in Defendant's jobsites, including jobsites in Texas and New Mexico. Further, Named Plaintiff and the FLSA Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis, plus non-discretionary bonuses, but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek. More specifically, Defendant knowingly refused to pay Named Plaintiff and the FLSA Class Members for their Drive Time and Off the Clock Time; Defendant also knowingly refused to include the non-discretionary bonuses in the overtime rate calculation. Thus, the FLSA Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

54. Defendant's failure fully to compensate employees for hours worked in excess of 40 in a workweek as required by the FLSA results from a policy or practice of refusing to pay its fuel delivery employees for Drive Time and Off the Clock Time and also failing to include the non-discretionary bonuses in the Plaintiffs' regular rates of pay.  This policy or practice is applicable to the Named Plaintiff and all FLSA Class Members.  Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit.  Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all FLSA Class Members.

## VIII. NM WAGE ACT RULE 23 CLASS ALLEGATIONS

55. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Named Plaintiff Scheve, individually and on behalf of all other similarly situated employees, pursues NM Wage Act claims against Defendant.

56. Named Plaintiff Scheve seeks certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "NM Class Members") as follows:

> **All current and former fuel delivery employees of Defendant who were paid by the hour and worked for Defendant in New Mexico in at least one workweek in the last three years.**

57. Named Plaintiff Scheve, individually and on behalf of all other similarly situated employees, seek relief on a class basis challenging Defendant's practice of knowingly permitting its fuel delivery employees to work more than forty hours per week but failing to pay Named Plaintiff Scheve and other similarly situated employees one and one-half times their regular hourly rate of pay for hours worked over forty in a week.

58. Named Plaintiff and the NM Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, a driver in Defendant's worksites in

New Mexico.  Further, Named Plaintiff and the NM Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis, plus non-discretionary bonuses, but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek.  More specifically, Defendant knowingly refused to pay Named Plaintiff and the NM Class Members for their Drive Time, and it knowingly refused to include non-discretionary bonuses in the regular rate of pay and thus knowingly failed to pay Named Plaintiff and the NM Class Members.  Thus, the NM Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

59. Defendant's failure to compensate employees for hours worked in excess of 40 in a workweek as required by the NM Wage Act results from a policy or practice of refusing to pay its fuel delivery employees for Drive Time and Off the Clock Time and also failing to include the non-discretionary bonuses in the overtime rate calculation.  This policy or practice is applicable to the Named Plaintiff and all NM Class Members.  Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit.  Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all NM Class Members.

60. Therefore, throughout the relevant period, Defendant knew that Named Plaintiff and NM Class Members were not being properly compensated for all of their hours worked.

61. Defendant maintained common work, time, and pay policies and procedures throughout its New Mexico locations. As a result, Named Plaintiff and NM Class Members are similarly situated regardless of their location and have been regularly deprived of pay for workweeks during which they worked more than forty hours.

62. Plaintiffs' NM Wage Act claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for the certification of a class action under Federal Rule of Civil Procedure 23.

63. **Numerosity.** The class satisfies the numerosity standard as it is believed that there are at least 100 NM Class Members. Consequently, joinder of all NM Class Members in a single action is impracticable. The data required to calculate the size of the class is within the sole control of Defendant.

64. **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

   a)   Whether Defendant violated the NM Wage Act by failing to pay the NM Class Members overtime compensation for their Off the Clock Time;

   b)   Whether Defendant violated the NM Wage Act by failing to pay the NM Class Members overtime compensation for their Drive Time;

   c)   Whether Defendant violated the NM Wage Act by failing to include non-discretionary bonuses in the regular rate of pay and thus failed to pay the NM Class Members proper overtime compensation for all hours worked over forty in a workweek;

   d)   Whether Defendant's violation of the NM Wage Act constituted a continuing course of conduct; and

   e)   The proper measure of damages sustained by the NM Class Members.

65. **Typicality**. Named Plaintiff's claims are typical of those of the class because Named Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the prospective NM Class Members. Like the NM Class Members, the Named Plaintiff worked as a fuel delivery

**Plaintiff's Original Complaint**                                      **Page 14**

employee in New Mexico worksites.  Like the NM Class Members, Named Plaintiff regularly worked in excess of forty hours per week.  Like the NM Class Members, Named Plaintiff was not compensated for his Drive Time. The other facts outlined above likewise apply equally to both Named Plaintiff and the NM Class Members.

66. **Adequacy**. Named Plaintiff is an adequate representative of the class because their interests do not conflict with the interests of the NM Class Members they seek to represent. The interests of the members of the class will be fairly and adequately protected by Named Plaintiff and the undersigned counsel, who have experience in wage and hour class and collective action lawsuits.

67. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation of one-hundred claims or more would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all NM Class Members in conformity with the interest of efficiency and judicial economy.

### IX. CAUSE OF ACTION ONE:  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

68. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing employees, including Named Plaintiff and the FLSA Class Members, in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-one-

half times their regular rates for which they were employed.  Defendant has acted willfully in

failing to pay Named Plaintiff and the Class Members in accordance with applicable law.

## X. CAUSE OF ACTION TWO:  FAILURE TO PAY WAGES IN ACCORDANCE WITH NEW MEXICO MINIMUM WAGE ACT

69. During the relevant period, Defendant violated the New Mexico Minimum Wage Act, N.M. STAT.

§ 50-4-22 (West 2018), by employing employees, including Named Plaintiff and the NM Class

Members, for workweeks longer than 40 hours without compensating such employees for their

work in excess of forty hours per week at rates no less than one-and-one-half times their regular

hourly rate.  Defendant's violation of New Mexico Minimum Wage Act occurred as part of a

continuing course of conduct.

## XI. PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Named Plaintiff prays for judgment against

Defendant as follows:

a. For an expedited Order certifying a class and directing notice to putative class members pursuant to 29 U.S.C. § 216(b), and individually, and on behalf of any and all such class members.

b. For an Order certifying the NM Wage Law claims as a Class Action pursuant to Fed. R. Civ. P. 23, for designation of Named Plaintiff as Class Representative under applicable NM law, and for designation of Plaintiff's counsel as class counsel;

c. For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Named Plaintiff (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff (and those who may join the suit);

d. For an Order awarding Named Plaintiff and the NM Class Members damages

pursuant to N.M. Stat. 50-4-26;

e.      For an Order awarding Plaintiff and the NM Class Members damages for all violations, regardless of the date on which they occurred, as a result of Defendant's continued course of conduct pursuant to N.M. Stat. Ann. 50-4-32;

f.      For an Order awarding Named Plaintiff (and those who may join in the suit) the taxable costs and allowable expenses of this action;

g.      For an Order awarding Named Plaintiff (and those who may join in the suit) attorneys' fees; and

h.      For an Order awarding Named Plaintiff (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

i.      For an Order awarding Named Plaintiff declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*.; and

j.      For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**
700 West Summit Drive
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 – telecopier

By: */s/ Edmond S. Moreland, Jr.*
        Edmond S. Moreland, Jr.
        State Bar No. 24002644
        edmond@morelandlaw.com

Daniel A. Verrett
Texas State Bar No. 24075220
daniel@morelandlaw.com
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Tel: (512) 782-0567
Fax: (512) 782-0605

**ATTORNEYS FOR PLAINTIFFS**